NOT FOR PUBLICATION OR CITATION

Eastern District of Kentucky
**FILED**

APR 4 - 2006

AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON

CIVIL ACTION NO. 05-CV-206-WOB

BYRON D. HARRINGTON                                                        PLAINTIFF

VS:                          **MEMORANDUM ORDER**

UNITED STATES DRUG ENFORCEMENT AGENCY                    DEFENDANT

This matter is before the Court on the motion of the defendant agency to dismiss the civil action herein.

### BACKGROUND

On October 21, 2005, Byron D. Harrington, an individual incarcerated in the Warren Correctional Institution in Lebanon, Ohio, initiated the instant cause of action by submitting a *pro se* 28 U.S.C. § 1331 complaint, together with a motion for leave to proceed *in forma pauperis*. The motion was granted and the complaint was screened by this Court, pursuant to 28 U.S.C. §§ 1915A and 1915(e). In a Memorandum Opinion and Order issued December 14, 2005, the Court summarized the plaintiff's claims herein, as follows:

> The plaintiff claims that the Federal Drug Enforcement Agency ("DEA") illegally took $10,736.00 from him, in violation of his rights under the 4th, 5th, and 6th Amendments to the United States Constitution.
> . . .
> The plaintiff alleges that on March 7, 2001, at the Greater Cincinnati Airport in Northern Kentucky, he was stopped by DEA agents and subsequently arrested. Upon a search of his person, purportedly without consent, agents of the DEA found the sum of $10,736.00 in cash in a pocket of the clothing which he was wearing and took possession of the money. The plaintiff alleges that at the time and thereafter he "asked agents for a DEA-12 receipt or any type of written receipt . . . [but] he was refused numerous times."

> The plaintiff claims that to date, he has no knowledge as to the whereabouts of his money or any knowledge of a forfeiture proceeding, even though his location was at all times known by the government through a prior lawsuit about the illegal arrest. The loss of the funds was, therefore, illegal, as it was incident to a warrantless seizure, taken without due process, and done without his having the benefit of counsel. He seeks to recover the entire $10,736.00.

Record No. 6 at 1-2. The Court noted that this is the second lawsuit which Harrington filed in regard to the same airport incident, the first being *Harrington v. Fred Painter*, Cov. No. 02-CV-82-WOB, which claimed racial profiling by individual defendants but was ultimately dismissed.[1]

As relief, the plaintiff is seeking "compensatory damages . . . plus an additional $10,736.00 dollars returned to plaintiff for the illegal forfeiture of his personal properties." Citing 18 U.S.C. §983 and *Dusenbery v. United States*, 534 U.S. 161 (2002), the Court directed that summons issue for the DEA to respond.

---

[1] This Court summarized the previous action as follows:

> As to the prior lawsuit, *Harrington v. Fred Painter*, . . . was a proceeding pursuant to 28 U.S.C. §1331 and the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and it was filed, *pro se*, on April 1, 2002, a little over one year after the airport incident complained-of. The plaintiff named numerous defendants, including Delta Airlines, the DEA, and other United States governmental units and individual employees of the federal government, describing the occurrence ta the airport and alleging that he was the victim of improper racial profiling. The record in that case reveals that the plaintiff was incarcerated then, as he is now, in the custody of Ohio Corrections officials, several pleadings therein containing the explanation that his imprisonment by Ohio authorities was on an unrelated matter.
>
> In that prior proceeding, in a handwritten amended complaint [Record No. 1], the plaintiff stated that he sought a declaration that his rights had been violated; injunctive relief in the form of the defendants' stopping the practice of profiling; compensatory damages, including the sum of $10,736.00; and substantial punitive damages. The defendants therein were dismissed in a series of rulings. Several of the governmental defendants, including the DEA, were dismissed by this Court, *sua sponte*, upon the screening of the complaint, on the ground that the doctrine of sovereign immunity bars a *Bivens* claim for damages. The remaining defendants were dismissed on various other grounds, in response to their individual motions. After the granting of the last two defendants' motion for summary judgment, on June 13, 2005, the Court issued its Final Judgment [Record No. 62], dismissing the action and striking it from the docket of this Court.

Record No. 6 at 2-3.

2

## MOTION TO DISMISS

The United States has responded with a motion to dismiss [Record No. 8], grounded in the money's having been forfeited to the government. With regard to attacking that forfeiture, Congress has decreed that a Motion to Set Aside an Administrative Forfeiture, is "the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute." 18 U.S.C. §983(e)(5).

Therefore, the defendant asks that the instant action be construed as a Motion to Set Aside an Administrative Forfeiture, as provided in 18 U.S.C. § 983(e)(1), and sets out the steps the DEA took to accomplish the forfeiture of the money. The government then points out that the statute also contains the standards by which a motion should be judged and under which the instant claimant is not entitled to relief.

In order to prevail, the person entitled to notice of a forfeiture must show that the government did not take reasonable steps to provide notice and also show that the person did not have reason to know of the seizure with sufficient time to file a timely claim. 18 U.S.C. § 983(e)(1)(A)-(B). The government claims that the agency took reasonable steps to provide notice to the plaintiff, and he is, therefore, not entitled to having the forfeiture set aside.

In support, the DEA attaches the declaration of an attorney who identifies himself as "the Forfeiture Counsel" for the DEA. He provides exhibits and recites four (4) steps which were taken to give Plaintiff Harrington notice of the forfeiture proceeding. He claims that each step was reasonable and in conformity with federal law. Additionally, the government cites Supreme Court law and Seventh Circuit precedent as to what constitutes reasonable efforts at notice by the government. *Dusenbery* is distinguished on the ground that the movant therein was in federal prison, his custody was on charges related to the forfeiture, and the FBI knew of the ongoing criminal

3

proceedings.

The plaintiff was granted an extension of time to respond to the DEA's motion, but has not filed a Response.

## DISCUSSION

The record herein reveals that the parties agree as to the amount of cash seized from the plaintiff at the Cincinnati airport on March 7, 2001. The DEA claims, and the plaintiff does not refute, that the agency then took the following steps:

(1) On March 27, 2001, sent notice, via certified mail, to Harrington at 702 Maple Street, Cincinnati, Ohio, at the address which the plaintiff apparently gave at the time of the seizure and which was used on the Kentucky arrest warrant for him (Exhibit [hereinafter "Ex."] B); this notice was returned by postal authorities who marked on the envelope that there was "no such number/street" (Ex. A-2);

(2) On April 9th, 16th, and 23rd of 2001, three successive Mondays, published a notice with Harrington's name in the *Wall Street Journal*, "a newspaper of general circulation in the Eastern District of Kentucky," pursuant to 21 Code of Federal Regulations ("CFR") § 1316.75;

(3) On June 4, 2001, sent another notice via certified mail to Plaintiff in care of his attorney, *i.e.*, Byron D. Harrington, c/o Wm. Stewart Mathew II/Esq., in Cincinnati, and someone signed for its receipt on April 8, 2001 (Ex. A-7);

Meanwhile, on June 1, 2001, the DEA requested that the plaintiff's address be verified by the bail bondsman for Harrington. Exhibit C is a copy of that request. The response portion thereof is undated but someone has written a new address, 1088 Simmons Street, in Cincinnati, and also written "release from Hamilton Cty. Jail 6/5/01 @ 11:55 a.m."

4

(4) Finally, the DEA, on October 5, 2001, sent yet another notice to the plaintiff, this one to the recently suggested Simmons Street address, and the return reveals that the notice was accepted, someone named Jackson signing the receipt on October 10, 2001. Exhibit A-9.

On January 18, 2002, the DEA issued a declaration of administrative forfeiture of the $10,736.00 seized from Harrington. Ex. A-10. More than three years later, in November of 2005, the plaintiff filed the instant action, and on January 30, 2006, the DEA filed the instant motion revealing the forfeiture proceeding and the documents associated therewith.

The DEA's motion presumably answers Harrington's initial query of what happened to the money which he last saw at the airport on March 7, 2001. To the extent that the plaintiff contends that he did not receive the required notice of the forfeiture proceeding and seeks to invalidate the forfeiture for lack of said notice, the defendant is correct that the plaintiff's "exclusive remedy" is not in filing a *Bivens* action, but in bringing a motion to set aside the forfeiture. 18 U.S.C. §983(e)(5).

Construing the instant action as such a motion, the Court must decide whether Harrington has met the statutory standards for the Court to grant the motion. The statute provides that the motion

(1) ... shall be granted if –

> (A) the Government knew or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; *and*
> (B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

18 U.S.C. §983(e)(1) (emphasis added).

5

Of these two requisites, the Court cannot find that either has been met. The moving party, Mr. Harrington, knew that the DEA had seized the money from him, and thus, he cannot satisfy §983(e)(1)(B). As to the DEA's actions, the government knew or had reason to know that Harrington had an interest in the money seized from him, thus satisfying the first condition in §983(e)(1)(A), but did they "fail[] to take reasonable steps to provide such party with notice"? The Court finds that on the record before it, they did not fail to take reasonable steps to notify Harrington, and so the second line of §983(e)(1)(A) is not satisfied. Therefore, the Court may not grant the motion.

Nor can the Court find a violation of the Constitution. The U. S. Supreme Court has long held that due process is satisfied so long as notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

More recently, in *Dusenbery v. United States*, 534 U.S. 161 (2002), the Court examined the notice required specifically for forfeiture proceedings and found that "*Mullane* supplies the appropriate analytical framework." *Id.* at 167 (affirming the decision of the Sixth Circuit). "Was the notice in this case 'reasonably calculated under all the circumstances' to apprise [Dusenbery] of the pendency of the cash forfeiture?" *Id.* at 168.

Due process does not require actual notice, so long as the government acted reasonably in selecting means likely to inform the persons affected. *Krecioch v. United States*, 221 F.3d 976, 980 (7th Cir.), *cert. denied*, 531 U.S. 1026 (2000). Written notice of forfeiture by certified mail to the claimant's residence generally satisfies due process even if the claimant does not receive actual

6

notice (*Id.* at 981), whereas due process is not satisfied if the notifying party knew or had reason to know that notice would be ineffective (*Id.* at 980).

There are cases holding that mailing a notice of forfeiture to a claimant's residence when the government knows that he is incarcerated or in federal custody violates due process, but the record herein shows no situation. In fact, the plaintiff's current incarceration is, he admits, related to a separate matter. Moreover, only weeks after the seizure, the government sent Harrington's notice to the address which he gave authorities. When that was returned, the government did not stop there but pursued an accurate address for several more months, arranged three publications in a newspaper,[2] and sent two more notices to the plaintiff's attorney and to an address from a state bail bondsman who would have a keen interest in keeping a current address on Harrington. Both of the mailings were accepted by someone at that address.

The Court finds that the forfeiture notices to Harrington's then-known address, his attorney, and an address later procured from his bail bondsman were sufficient to satisfy the statute and *Mullane*.

## CONCLUSION

Accordingly, the Court being advised,

**IT IS HEREBY ORDERED** as follows:

(1)     The defendant's motion to dismiss [Record No. 8] is **GRANTED**.

(2)     This action is **DISMISSED** and Judgment shall be entered contemporaneously with

---

[2] The government does not explain why it would choose the *Wall Street Journal* as the publication to provide notice, but the plaintiff has not suggested that it would not be an unreasonable choice. Due process does not require that authorities use the best possible method of notification, just one reasonably calculated to notify a possible claimant. *Krecioch*, 221 F.3d at 981. *See also Garcia v. Meza*, 235 F.3d 287, 292 (F.3d 2000) (quoting *Robinson v. Hanrahan*, 409 U.S. 38, 40 (1972) as to publication notices).

this Memorandum Order in favor of the defendant.

    This the ___4th___ day of April, 2006.

                                                         _/s/ William O. Bertelsman_
                                                   **WILLIAM O. BERTELSMAN, JUDGE**