NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON

Eastern District of Kentucky
FILED
APR 6 - 2006
AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 05-CV-206-WOB

BYRON D. HARRINGTON     PLAINTIFF

VS.     **AMENDED MEMORANDUM ORDER**

UNITED STATES DRUG ENFORCEMENT AGENCY     DEFENDANT

\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\*

This matter was recently dismissed and judgment entered against the plaintiff. Record Nos. 11-12. It is back before the Court today, upon the Court Clerk's discovery that the plaintiff did file a response to the defendant agency's motion to dismiss, but the response was erroneously filed in a previous action of Harrington's,[1] rather than this case file.

The plaintiff's response has now been filed herein [Record No. 13]. This amended memorandum order will include consideration of the response.

BACKGROUND

On October 21, 2005, Byron D. Harrington, an individual incarcerated in the Warren Correctional Institution in Lebanon, Ohio, initiated the instant cause of action by submitting a *pro se* 28 U.S.C. §1331 complaint, together with a motion for leave to proceed *in forma pauperis*. The motion was granted and the complaint was screened by this Court, pursuant to 28 U.S.C. §§1915A and 1915(e). In a Memorandum Opinion and Order issued December 14, 2005, the Court

---

[1] *Harrison v. U.S. Dept of Justice*, Covington No. 02-CV-082-WOB, will be discussed below. It was decided against the plaintiff on June 13, 2005, and he took no appeal. Therefore, the case was closed when the instant lawsuit was filed.

summarized the plaintiff's claims herein, as follows:

> The plaintiff claims that the Federal Drug Enforcement Agency ("DEA") illegally took $10,736.00 from him, in violation of his rights under the 4th, 5th, and 6th Amendments to the United States Constitution.
> . . .
> The plaintiff alleges that on March 7, 2001, at the Greater Cincinnati Airport in Northern Kentucky, he was stopped by DEA agents and subsequently arrested. Upon a search of his person, purportedly without consent, agents of the DEA found the sum of $10,736.00 in cash in a pocket of the clothing which he was wearing and took possession of the money. The plaintiff alleges that at the time and thereafter he "asked agents for a DEA-12 receipt or any type of written receipt . . . [but] he was refused numerous times."
>
> The plaintiff claims that to date, he has no knowledge as to the whereabouts of his money or any knowledge of a forfeiture proceeding, even though his location was at all times known by the government through a prior lawsuit about the illegal arrest. The loss of the funds was, therefore, illegal, as it was incident to a warrantless seizure, taken without due process, and done without his having the benefit of counsel. He seeks to recover the entire $10,736.00.

Record No. 6 at 1-2. The Court noted that this is the second lawsuit which Harrington filed in regard to the same airport incident, the first being *Harrington v. Fred Painter*, Cov. No. 02-CV-082-WOB, which claimed racial profiling by individual defendants but was ultimately dismissed.[2]

---

[2] This Court summarized the previous action as follows:

> As to the prior lawsuit, *Harrington v. Fred Painter*, . . . was a proceeding pursuant to 28 U.S.C. §1331 and the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and it was filed, *pro se*, on April 1, 2002, a little over one year after the airport incident complained of. The plaintiff named numerous defendants, including Delta Airlines, the DEA, and other United States governmental units and individual employees of the federal government, describing the occurrence ta the airport and alleging that he was the victim of improper racial profiling. The record in that case reveals that the plaintiff was incarcerated then, as he is now, in the custody of Ohio Corrections officials, several pleadings therein containing the explanation that his imprisonment by Ohio authorities was on an unrelated matter.
>
> In that prior proceeding, in a handwritten amended complaint [Record No. 1], the plaintiff stated that he sought a declaration that his rights had been violated; injunctive relief in the form of the defendants' stopping the practice of profiling; compensatory damages, including the sum of $10,736.00; and substantial punitive damages. The defendants therein were dismissed in a series of rulings. Several of the governmental defendants, including the DEA, were dismissed by this Court, *sua sponte*, upon the screening of the complaint, on the ground that the doctrine of sovereign immunity bars a *Bivens* claim for damages. The remaining defendants were dismissed on various

2

As relief in this second action, the plaintiff is seeking "compensatory damages . . . plus an additional $10,736.00 dollars returned to plaintiff for the illegal forfeiture of his personal properties." Citing 18 U.S.C. §983 and *Dusenbery v. United States*, 534 U.S. 161 (2002), the Court directed that summons issue for the DEA to respond.

## MOTION TO DISMISS

The United States has responded with a motion to dismiss [Record No. 8], grounded in the money having been forfeited to the government. With regard to attacking that forfeiture, Congress has decreed that a Motion to Set Aside an Administrative Forfeiture is "the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute." 18 U.S.C. §983(e)(5).

Therefore, the defendant asks that the instant action be construed as a Motion to Set Aside an Administrative Forfeiture, as provided in 18 U.S.C. §983(e)(1), and sets out the steps the DEA took to accomplish the forfeiture of the money. The government then points out that the statute also contains the standards by which a motion should be judged and under which the instant claimant is not entitled to relief.

In order to prevail, the person entitled to notice of a forfeiture must show that the government did not take reasonable steps to provide notice and also show that the person did not have reason to know of the seizure with sufficient time to file a timely claim. 18 U.S.C. §983(e)(1)(A)-(B). The government claims that the agency took reasonable steps to provide notice to the plaintiff, and he is, therefore, not entitled to having the forfeiture set aside.

---

other grounds, in response to their individual motions. After the granting of the last two defendants' motion for summary judgment, on June 13, 2005, the Court issued its Final Judgment [Record No. 62], dismissing the action and striking it from the docket of this Court.

Record No. 6 at 2-3.

3

In support, the DEA attaches the declaration of an attorney who identifies himself as "the Forfeiture Counsel" for the DEA. He recites four (4) different steps which were taken to give Plaintiff Harrington notice of the forfeiture proceeding, and he attaches copies thereof as exhibits. The DEA claims that each step was reasonable and in conformity with federal law. Additionally, the government cites Supreme Court law and Seventh Circuit precedent as to what constitutes reasonable efforts at notice by the government. *Dusenbery* is distinguished on the ground that the movant therein was in federal prison, his custody was on charges related to the forfeiture, and the FBI knew of the ongoing criminal proceedings.

Plaintiff's Response

After being granted an extension of time, the plaintiff apparently filed a timely response, now entered into this record as D.E. 13.

The plaintiff points to the declaration of forfeiture (Exhibit [hereinafter "Ex."] A-10), wherein another attorney of the DEA Asset Forfeiture Section has signed that with regard to the $10,736 U.S. Currency, she "found that there was sufficient information to support the forfeiture of this property"; and the plaintiff contends that this finding does not support a forfeiture, which has a heightened burden of proof, *i.e.*, a preponderance of the evidence, which was not met.

Additionally, the plaintiff sets out the language of 18 U.S.C. §983(e)(1)(A)-(B) and claims to satisfy its standards. He first alleges that he made several efforts to get DEA Agent Painter to give him a receipt or any kind of notice about the taking of his money. The plaintiff also claims that he had no reason to know that it was subject to a forfeiture proceeding, because he was not charged with any crime related to the seizure. As to the DEA's mailing of notices, he claims that he was residing at the Maple Street address, except for a stint in the county jail in June of 2001, and his going into

state corrections custody in October of 2001. As to the time in jail, the plaintiff claims that between the June 1st fax inquiring into a new address for Harrington (Ex. C) and his release from jail on the morning of June 5th, there was ample time to get a notice to him. Finally, Plaintiff contends that putting a notice in the Wall Street Journal was unreasonable, as it is not a local publication and would not be purchased by "everyday people who live below the poverty level, such as myself."

Because all of the DEA's notice efforts were "evasive," Harrington requests that this Court set aside the forfeiture. Plaintiff also adds another constitutional claim, asking the Court to hold that the forfeiture of that much money was excessive, in violation of the Eighth Amendment.

## DISCUSSION

The record herein reveals that the parties agree as to the amount of cash seized from the plaintiff at the Cincinnati airport on March 7, 2001. The DEA claims, and the plaintiff does not refute, that the agency took the following steps:

(1) on March 27, 2001, sent notice, via certified mail, to Harrington at 702 Maple Street, Cincinnati, Ohio, at the address where the plaintiff was living and which he gave at the time of the seizure and which was used on the Kentucky arrest warrant for him (Ex. B); exhibits show that this notice was returned by postal authorities who marked on the envelope that there was "no such number/street" (Ex. A-2);

(2) on April 9th, 16th, and 23rd of 2001, three successive Mondays, published a notice with Harrington's name in the *Wall Street Journal*, "a newspaper of general circulation in the Eastern District of Kentucky," pursuant to 21 Code of Federal Regulations ("CFR") §1316.75;

(3) on June 4, 2001, sent another notice via certified mail to Plaintiff in care of his attorney, *i.e.*, Byron D. Harrington, c/o Wm. Stewart Mathew II/Esq., in Cincinnati, and someone

5

signed for its receipt on April 8, 2001 (Ex. A-7);

Meanwhile, on June 1, 2001, the DEA requested that the plaintiff's address be verified by the bail bondsman for Harrington. Exhibit C is a copy of that request. The response portion thereof is undated but someone has written a new address, 1088 Simmons Street, in Cincinnati, and also written "release from Hamilton Cty. Jail 6/5/01 @ 11:55 a.m." Finally, the DEA

(4) on October 5, 2001, sent yet another notice to the plaintiff, this one to the recently suggested Simmons Street address, and the return reveals that the notice was accepted, someone named Jackson signing the receipt on October 10, 2001. Exhibit A-9.

On January 18, 2002, the DEA issued a declaration of administrative forfeiture of the $10,736.00 seized from Harrington. Ex. A-10. More than three years later, in November of 2005, the plaintiff filed the instant action, and on January 30, 2006, the DEA filed the instant motion revealing the forfeiture proceeding and the documents associated therewith.

The DEA's motion presumably answers Harrington's initial query of what happened to the money which he last saw at the airport on March 7, 2001. To the extent that the plaintiff contends that he did not receive the required notice of the forfeiture proceeding and seeks to invalidate the forfeiture for lack of said notice, the defendant is correct that the plaintiff's "exclusive remedy" is not in filing a *Bivens* action, but in bringing a motion to set aside the forfeiture. 18 U.S.C. §983(e)(5).

Construing the instant action as such a motion, the Court must decide whether Harrington has met the statutory standards for the Court to grant the motion. The statute provides that the motion

(1) . . . shall be granted if –

6

>(A) the Government knew or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; *and*
>(B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

18 U.S.C. §983(e)(1) (emphasis added).

Of these two requisites, the Court cannot find that either has been met. The moving party, Mr. Harrington, knew that the DEA had seized the money from his pocket, and he admits that he had sufficient notice of the seizure to have purportedly made demands for a receipt from Painter at the time. Thus, he had "reason to know of the seizure within sufficient time to file a timely claim" and cannot satisfy §983(e)(1)(B).

As to the DEA's actions, the government claims that its efforts at notice were reasonable, hence support upholding the forfeiture. Government agents certainly knew or had reason to know that Harrington had an interest in the money seized from him, thus satisfying the first condition in §983(e)(1)(A). Did they, however, "fail[] to take reasonable steps to provide such party with notice"? The Court finds that on the record before it, they did not fail to take reasonable steps to notify Harrington, and so the second half of §983(e)(1)(A) is not satisfied. Therefore, the Court may not grant the motion.

Nor can the Court find a violation of the Constitution. The U. S. Supreme Court has long held that due process is satisfied so long as notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

More recently, in *Dusenbery v. United States*, 534 U.S. 161 (2002), the Court examined the notice required specifically for forfeiture proceedings and found that "*Mullane* supplies the appropriate analytical framework." *Id.* at 167 (affirming the decision of the Sixth Circuit). "Was the notice in this case 'reasonably calculated under all the circumstances' to apprise [Dusenbery] of the pendency of the cash forfeiture?" *Id.* at 168.

Neither the statute nor due process requires actual notice and this Court also is loathe to require that the government demonstrate actual notice, particularly as evading notice accrues to the claimant's subsequent benefit; it is enough that the government acted reasonably in selecting means likely to inform the persons affected. *Krecioch v. United States*, 221 F.3d 976, 980 (7th Cir.), *cert. denied*, 531 U.S. 1026 (2000). Written notice of forfeiture by certified mail to the claimant's residence generally satisfies due process even if the claimant does not receive actual notice (*Id.* at 981), whereas due process is not satisfied if the notifying party knew or had reason to know that notice would be ineffective (*Id.* at 980).

There are cases holding that mailing a notice of forfeiture to a claimant's residence when the government knows that he is incarcerated or in federal custody violates due process, but the record herein shows no situation. In fact, the plaintiff's current incarceration is, he admits, related to a separate matter. Moreover, only weeks after the seizure, the government sent Harrington's notice to the address where he still maintains he lived at the time.

When the initial mailing was returned, the government did not stop there but pursued an accurate address for several more months, arranged three publications in a newspaper,[3] and sent two

---

[3] The plaintiff criticizes, and government does not explain, the DEA's choice of the *Wall Street Journal* as the publication to provide notice. Even though not understanding that choice, the Court still cannot conclude that it was an unreasonable effort, particularly in the face of the other, multiple notice attempts, some of which may have actually

8

more notices--one to the plaintiff's attorney and another to an address obtained from a state bail bondsman--both of whom would have a keen interest in keeping a current address on Harrington. Both of these mailings were accepted by someone at that address and both were reasonable. It is speculative to conclude, as the plaintiff suggests, that a June 1st inquiry into his address would be received, investigated, an address discovered, and the information forwarded by June 5th.

The Court finds that the forfeiture notices to Harrington's then-known address, his attorney, and an address later procured from his bail bondsman were sufficient to satisfy the statute and *Mullane*. His belated attempt to state an Eighth Amendment claim is actually an attempt to amend, which this Court is not authorized to permit. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997).

## CONCLUSION

Accordingly, the Court being advised,

**IT IS HEREBY ORDERED** as follows:

(1) The Court's Memorandum Order and Judgment [Record Nos. 11-12], entered herein on April 4, 2006, are **SET ASIDE, STRICKEN,** and **HEREAFTER HELD FOR NAUGHT**.

(2) The defendant's motion to dismiss [Record No. 8] is **GRANTED**.

(3) This action is **DISMISSED** and Judgment shall be entered contemporaneously with this Memorandum Order in favor of the defendant.

---

reached the plaintiff. Due process does not require that authorities use the best possible method of notification, just one reasonably calculated to notify a possible claimant. *Krecioch*, 221 F.3d at 981. *See also Garcia v. Meza*, 235 F.3d 287, 292 (F.3d 2000) (quoting *Robinson v. Hanrahan*, 409 U.S. 38, 40 (1972) as to publication notices).

This the \_\_\_6TH\_\_\_ day of April, 2006.

_____*William O. Bertelsman*_____
WILLIAM O. BERTELSMAN, JUDGE